**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br><br><br>**ANGEL GABRIEL DIAZ-ROSADO,**<br>Defendant. | Criminal No. 19-211 (ADC) |

**REPORT AND RECOMMENDATION**

### I.  Introduction

On March 20, 2019, a criminal complaint was filed against Mr. Angel Gabriel Díaz-Rosado. An arrest warrant was issued and Mr. Díaz was arrested that same day. After his arrest, Defendant was interviewed by law enforcement agents. The interview was video recorded. A four-count indictment followed charging Defendant with production of child pornography in violation to 18 U.S.C. § 2251(a) and (e), coercion and enticement of minors in violation to 18 U.S.C. § 2422(b), receipt of child pornography in violation to 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and transfer of obscene material to a minor in violation of 18 U.S.C. § 1470. Docket No. 11.

Defendant filed a motion to suppress incriminating statements given to law enforcement agents on the day of his arrest. Docket No. 26. Defendant sustains that he was anxious and took medication (Klonopin) prior to his arrest and the interview with law enforcement. He further argues that law enforcement agents told him he could go home as soon as he cooperated. Defendant submitted a sworn statement in support of his request asserting that he felt "drowsy and confused" during the interview and that he is unable to remember what transpired during the interview. Docket No. 26-1. The Government opposed. Docket No. 31. The motion was referred to the undersigned for a Report and Recommendation. Docket No. 55. An evidentiary hearing was held on March 15, 2022. Docket No. 101. The Government called Special Agent Reinaldo Medina to the stand. The defense called Dr. Juan Rodríguez-Vélez, Dr. Nilda Rosa Tarafa-Pérez, Dr. Analid

Case 3:19-cr-00211-ADC   Document 103   Filed 04/19/22   Page 2 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

T. Díaz-Ramírez and the Defendant to the stand. Evidence was admitted, including a document titled Statement of Rights and Waiver and a video recording and transcript of the interview of the Defendant on March 20, 2019. After carefully considering the evidence presented during the hearing, the Court recommends that Defendant's motion to suppress be **DENIED**.

**II.     Testimonial and Documentary Evidence**

Special Agent Reinaldo Medina

Special Agent Medina works in the Child Exploitation Unit of the Department of Homeland Security. He participated in the arrest and subsequent interview of the Defendant on March 20, 2019. SA Medina testified that on the day of the arrest he arrived at Defendant's home at approximately 3:00 p.m. but Defendant was not there. Defendant arrived driving his car at approximately 5:00 p.m., at which time the Defendant was placed under arrest. He testified that, after the arrest, Defendant was driven to the office of Homeland Security for processing. Defendant was interviewed for approximately one (1) hour. SA Medina described the Defendant's behavior at arrest and during the interview as alert and coherent.

SA Medina authenticated the recording of Defendant's interview and its transcript. These were admitted as Government Exhibits 1 and 1A. He also discussed the Statement of Rights and Waiver which were initialed and signed by Defendant during the interview. See Government Exhibits 2 and 2A. SA Medina explained that the first step at the interview was to explain to Defendant that there was a warrant issued for his arrest and that he had the rights set forth in the Statement of Rights. SA Medina further testified that Defendant was read the rights in Spanish and that the Defendant initialed the rights and signed the waiver of rights after reading and understanding the same. See Government Exhibit 3 (still shot of the interview at 7:12:17 p.m. on March 20, 20219, where Defendant appears signing the document admitted as Government Exhibit 2: Declaración de Derechos/Renuncia). Defendant's interview was conducted in Spanish.

SA Medina testified that Defendant's interview began at 7:09 p.m. and concluded at 8:02 p.m.; lasting 53 minutes. Defendant was not wearing handcuffs or shackles. See Government Exhibit 4 (still shot of the interview at 7:44:48 p.m. on March 20, 20219, where Defendant appears with his two hands on the table). Present during the interview were two agents; SA Medina and Special Agent Villanueva. SA Medina was wearing a jacket identifying himself as police of HSI. At no time during the interview did Defendant request that the interview stop. The interview was

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 3 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

recorded continuously from beginning to end. And SA Medina testified that Defendant knew why he was being interviewed, what pornography was, and that it was illegal. SA Medina further testified that throughout the interview Defendant was coherent, alert, aware, attentive to questions, responding questions including those that were open-ended, and providing information and details.

### Dr. Juan Rodríguez-Vélez

Dr. Rodríguez-Vélez is the current owner of Clínica Medicina Conductual, where Defendant received psychiatric care in the year 2012. Dr. Rodríguez-Vélez acquired the clinic on July 1, 2020, and does not have any information pertaining to Defendant's care. Records relating to Defendant's care were requested and would be produced to the parties. The parties agreed to supplement the record with any relevant evidence elicited from such records by March 25, 2022. No supplements have been filed.

### Dr. Nilda Rosa Tarafa-Pérez

Dr. Tarafa-Pérez is a clinical psychologist who treated Defendant from December 2013 through April 2014. She testified that she treated Defendant for major depression, which included symptoms of anxiety. She did not prescribe medications to Defendant and the last time she saw or spoke to the Defendant was in April 2014.

### Dr. Analid T. Díaz-Ramírez

Dr. Díaz-Ramírez is the Defendant's aunt and treating physician. She is a psychiatrist. She treated Defendant for depression and anxiety starting in 2012, when she was the Medical Director and part owner of the Clínica Medicina Conductual. As part of the treatment, Dr. Díaz-Ramírez prescribed the Defendant antidepressants, anxiolytics, and mood stabilizers. Specifically, she prescribed him Klonopin for anxiety. The recommended dose of Klonopin was 0.5 milligrams once a day or as needed. As testified, 0.5 milligrams are a low dose of Klonopin, but 1 milligram could be a high dose for someone who is not accustomed to taking Klonopin. According to Dr. Díaz-Ramírez some of the effects of Klonopin can include calmness, drowsiness, dizziness, amnesia, and confusion. Although Dr. Díaz-Ramírez sold her participation in the clinic in 2016, she testified to have continued to treat the Defendant up to his arrest in March 2019. However, after 2016, her treatment consisted solely in prescribing Klonopin to be taken as needed. She could not recall the last time she prescribed Klonopin to Defendant nor the last time she treated Defendant in session in the year 2016. Dr. Díaz-Ramírez does not have any records of her treatment of Defendant or of

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 4 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

her prescriptions to Defendant. Dr. Díaz-Ramírez was not with Defendant on the day of the arrest— before or after the interview with agents— and does not know whether Defendant took medications on the day of the arrest.

Angel Gabriel Díaz-Rosado and Sworn Statement at Docket No. 26-1

The Defendant testified that on the day of the arrest he went to work at 10:00 a.m. He also testified that at about 3:00 p.m. he noticed that he had several missed calls from his brother and the police station in Toa Baja. He explained that he felt anxious and, between 3:00 p.m. and 3:30 p.m., took one pill of Klonopin. He was at work until 6:00 p.m. At which time he saw that he had additional missed calls and, between 6:00 p.m. and 6:30 p.m., took a second pill of Klonopin. Defendant testified that he had not taken Klonopin in the months prior to the day of his arrest but that he was prescribed Klonopin to be taken as needed since the year 2012. And that when he took Klonopin he felt relaxed and calm, but that the medicine did not make him sleepy or drowsy.

He went home driving his car at 6:00 p.m. Defendant testified that his drive home took approximately 30 to 40 minutes. Upon arrival, Defendant parked his car in front of the house and was placed under arrest. Defendant testified that he did not feel sick and that he was aware of his surroundings. He testified that he was taken for processing and that he was told that after speaking to the agents he could go home. Defendant testified that he asked for food and water prior to and after the interview, that he felt dizzy, and that he does not remember the interview.

Defendant submitted a sworn statement in support of the motion to suppress. Docket No. 26-1. In that statement, Defendant claimed that he took the second Klonopin at 4:30 p.m. (rather than 6:00 p.m., as testified during the hearing). Defendant also affirmed to have felt drowsy and confused during the interview. Id. However, during the hearing, Defendant testified that Klonopin did not make him drowsy or sleepy.

Statement of Rights & Waiver

The Statement of Rights in Government Exhibits 2 and 2A include seven (7) rights, comprising all warnings due under Miranda.[1] Defendant included his initials "AD" on the left of

---

[1] The Statement of Rights includes the following: (1) Before we ask any questions, it is my duty to advise you of your rights. (2) You have the right to remain silent. (3) Anything you say can be used against you in a court of law or other proceeding. (4) You have the right to consult an attorney before making any statement or answering any questions. (5) You have the right to have an attorney present with you during questioning. (6) If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish. (7) If you decide to

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 5 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

each of the seven (7) lines. In the Waiver section in Government Exhibits 2 and 2A, Defendant included his name and signature on March 20, 2019, which were followed by the signatures of the two (2) agents present during the interview. The Waiver in Government Exhibits 2 and 2A provides the following: "I have read, or someone has read to me, this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer." See also Government Exhibit 3, a still shot of the interview at 7:12:17 p.m. on March 20, 20219, shows Defendant initialing and signing the document admitted as Government Exhibit 2.

Video of the Interview

The video recording of the interview was played in Court. The recording confirms that Defendant's interview was conducted in Spanish, that Defendant was not wearing handcuffs or shackles, that there were two agents present during the interview, and that the interview lasted less than one (1) hour. The recording of the interview also confirms that Defendant was read, and participated in reading, the Statement of Rights and Waiver. Defendant asked where to place his initials after reading the rights. Government Exhibit 1A at ¶¶ 9-17. Defendant was specifically advised by the agent that he should not sign the Waiver unless he had read the rights and was willing to answer questions, and that his waiver must be free and voluntary, that nothing had been promised to him, and that he had not been threatened in any way. Id. at ¶¶ 18-20. Defendant was also advised by the agent that everything he said in the interview would be revealed to the federal prosecutor. Id. at ¶ 19. Defendant expressed to have understood the explanations (by nodding in agreement) and signed the Waiver. Id. at ¶ 20.

During the interview, Defendant provided information regarding his age, date of birth, and type of work. Id. at ¶¶ 22-62. He also confirmed that he knew what child pornography was, what is a minor, and that child pornography is illegal. Id. at ¶¶ 83-92, 353-354, 830-837. Defendant gave the agents details regarding victims' first and last names, and nicknames, including specific spelling of such names. Id. at ¶¶ 110, 124. 136, 204-205, 261, 425-428, 473-478, 496-499, 701-705, 734-751. Defendant even knew the names of some of the parents of the victims and where they worked. Id. at ¶¶ 570-575, 584-593. Defendant could also remember the ages and years of

---

answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 6 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

birth of some of the victims. Id. at ¶¶ 130, 164, 166, 202-203, 206-207, 2012-217, 236-237, 241, 263, 753-758, 776-779. Defendant provided specific information regarding dates, ways, and means by which images of pornography were sought, shared and stored by him. Id. at ¶¶ 146-148, 238-239, 282-285, 432-434, 619-626. 780-803; ¶¶ 176-191, 251, 363-368, 438-450, 455-457, 465-472, 516-551. Defendant also provided specific information regarding internet sites visited to obtain child pornography and why he believed he was interested in such pornography. Id. at ¶¶ 299-312, 316-326; ¶¶ 341-348, 665-667, 687-697. Defendant also explained the meaning of certain phrases used by him to elicit child pornography. Id. at ¶¶ 221-227, 389-398, 858-867, 876-879. Importantly, Defendant appeared to understand that his actions were illegal and had consequences and expressed remorse. Id. at ¶¶ 906-908. At no time during the interview did Defendant ask the agents to stop the interview, request counsel, or request food or a break.[2] Defendant did not express feeling anxious, nervous, confused, dazed, drowsy, or sleepy. Defendant appeared alert, coherent, attentive.

    Defendant walked to the interview room freely. His hands were free and so were his legs. The Court observed the reading of the rights in the Statement of Rights, and Defendant appeared to follow and understand what was being read. In fact, Defendant made a gesture as if to ask the agents for a pen to put his initials in the Statement of Rights. Defendant was specifically asked whether he understood the Waiver and he nodded his head in agreement while signing the document. Defendant answered questions coherently. At times, he gave long answers and volunteered information and details not originally sought by the interviewing agent. He followed the line of questions posed by the agent without any apparent difficulty. Neither agent used a threatening tone nor raised their voice. In fact, at times the agent sought clarification by asking for indulgence and telling Defendant to correct any mischaracterization or misstatement of his answers. Id. at ¶¶ 196, 552. At all times, Defendant appeared calm and cooperative.

    **III.**    **Applicable Law and Analysis**

    In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the U.S. Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to

---

[2] Defendant requested water after the interview. The agents agreed. Government Exhibit 1A at ¶¶ 916-917.

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 7 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

secure the privilege against self-incrimination." United States v. Lugo Guerrero, 2005 WL 8163207 (D.P.R.). The procedural safeguards under Miranda require that the accused must be adequately and effectively appraised of his rights, and that the exercise of those rights be honored by law enforcement. Missouri v. Seibert, 542 U.S. 600, 608 (2004). Therefore, the Fifth Amendment privilege against self-incrimination requires that, prior to questioning a suspect, the police appraise the suspect of his right to remain silent and to have counsel present during questioning, and of the state's intention to use his statements to secure a conviction. Moran v. Burbine, 475 U.S. 412, 420 (1986) (discussing Miranda v. Arizona, 384 U.S. at 468-470, 473-474). To be sure, Miranda not only requires that the accused be informed of his rights but that police respect the accused's decision to exercise any such rights and cease questioning immediately upon the assertion of rights by the accused. Id.; Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). But there is no question that Miranda rights are can be waived. United States v. Downs-Moses, 329 F.3d 253, 267 (1st Cir. 2003). Any such waiver is valid when made voluntarily, knowingly and intelligently. Moran v. Burbine, 475 U.S. at 421.

The Court is required to presume that a defendant has not waive his Miranda rights. United States v. Downs-Moses, 329 F.3d at 267 (citation omitted); United States v. Carpentino, 948 F.3d 10, 26 (1st Cir. 2020). The burden is on the Government to prove a valid waiver by the preponderance of the evidence. Id.; Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Carpentino, 948 F.3d at 26. The inquiry is two-fold: (1) the relinquishment of rights must be a free and deliberate choice, absent intimidation, coercion or deception, and (2) the waiver must be made with full awareness of the nature of the rights being abandoned and of the consequences of such abandonment. Moran v. Burbine, 475 U.S. at 421 (citations omitted); United States v. Carpentino, 948 F.3d at 26.

The law is clear that coercive police activity is a necessary element for a finding of involuntariness. Colorado v. Connelly, 479 U.S. at 167; United States v. Boskic, 545 F.3d 69, 78 (1st Cir. 2008). Only confessions procured by coercive official tactics should be excluded as involuntary. United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir 2004). An admission or confession is not deemed coerced or involuntary merely because it would not have been made had the defendant not been mentally defective or deranged. The relevant constitutional principles are aimed at curbing abusive practices by public officers. United States v. Clark, 746 F.Supp.2d 176,

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 8 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

189 (D.Me. 2010) (quoting Rice v. Cooper, 148 F.3d 747, 750 (7th Cir. 1998)). Mental condition may thus affect voluntariness but does not, without coercion, dispose of the inquiry. Colorado v. Connelly, 479 U.S. at 164.

To find that a waiver of Miranda rights has been knowingly and intelligently, it is not necessary that the suspect know and understand every possible consequence of waiving the privilege against self-incrimination. United States v. Lugo Guerrero, 2005 WL 8163207 (D.P.R.) (quoting Colorado v. Spring, 479 U.S. 564, 574 (1987)). Rather, what is required is that the suspect be aware of his rights not to talk to law enforcement, to talk only in the presence of counsel, or to discontinue talking at any time. Id.

The Court is tasked with examining the totality of the circumstances to ascertain whether a waiver of Miranda rights is valid. Moran v. Burbine, 475 U.S. at 421 (citations omitted). Some factors to consider are defendant's age, intelligence, education, background, conduct, and his physical condition and mental health; whether defendant was informed of his rights; the duration and conditions of the interview and detention; any promises or threats made by investigators, the attitude of law enforcement officials, whether the defendant suffered any deprivation of essential needs, or whether law enforcement officers used coercive techniques. United States v. Vallar, 635 F.3d 271, 284 (7th Cir. 2011) (citation omitted); United States v. Smith, 606 F.3d 1270, 1276 (10th Cir. 2010) (citations omitted); United States v. Jacques, 744 F.3d 804, 809 (1st Cir 2014); United States v. Palmer, 203 F.3d 55, 60 (1st Cir. 2000).

As a point of departure, the Court has examined the Statement of Rights and Waiver form signed by Defendant on March 20, 2019. The Statement of Rights contains a list of all the rights required under Mirada: that Defendant had the right to remain silent, that he had the right to be represented by counsel, and to have an attorney present during interview, and that he had the right to stop the interview at any time. Government Exhibits 2 and 2A. Each one of the seven (7) rights in the Statement of Rights was initialed by the Defendant. Id. The recording of the interview confirmed that it was the Defendant, after reading the statement and seeking a pen from the agent, who placed his initials on the side of each one of the listed rights. There is no indication whatsoever that the act of placing such initials on the paper was unvoluntary or coerced. Quite the opposite. Furthermore, the Waiver contains unequivocal language of the waiver of rights required by Miranda. The video recording of the interview confirmed that Defendant was told not to sign the

Case 3:19-cr-00211-ADC    Document 103    Filed 04/19/22    Page 9 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

waiver until he had read the same and understood such a waiver. The Court cannot but conclude that the Statement of Rights and Waiver were read and understood by Defendant, and that he initialed and signed the documents voluntarily and knowingly. In and of itself this is strong evidence of waiver. See United States v. Hunter, 2007 WL 9627982 (D.P.R.) (string citations omitted); Missouri v. Seibert, 542 U.S. at 608-609 ("giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility") (citation omitted); see e.g., United States v. Van Dusen, 431 F.2d 1278, 1280 (1st Cir. 1970) (defendant appeared to have read and understood written waiver of rights, evidence of voluntariness); United States v. Lugo Guerrero, 524 F.3d 5, 8, 12 (1st Cir. 2008) (defendant read form, initialed each line, said he understood and signed forms; waiver found); United States v. Hunter, 2007 WL 9627982 (document read in Spanish, defendant appeared to understand explanations and what was being read, and document signed; waiver found); United States v. Palmer, 203 F.3d at 60 (agent recited Miranda rights from form, defendant expressed to have understood, defendant read and understood waiver form and initialed and signed waiver; waiver found).

  The video recording of Defendant's interview supports a finding of voluntary and knowing waiver of Miranda rights in this case. As it is evident from the video, both the Statement of Rights and the Waiver were read by and to Defendant and were admittedly understood prior to being initialed and signed by Defendant. Government Exhibit 1A at ¶¶ 9-20. The video also confirms that the SA Medina identified himself as law enforcement prior to beginning the interview and that the Defendant was not constrained or threatened in any way during the length of the interview. Furthermore, the interview was conducted in Spanish, Defendant's native language, and was not unreasonably lengthy. Defendant indicated that he understood the charges pending against him and the illegal conduct that prompted his arrest. Id. at ¶¶ 83-92, 353-354, 830-837. Defendant also appeared to voluntarily express remorse for his conduct and acknowledged that there could be consequences for his actions. Id. at ¶¶ 905-914. The video further confirms that the Defendant was not threatened or coerced, that the tone used by the interviewing agents was not intimidating or aggressive, and that at no time during the interview Defendant sought to stop the interview, requested counsel or expressed any concern about sharing information with law enforcement agents. To the contrary, Defendant seemed to answer questions voluntarily, sharing details and information that even exceeded the information sought by the agents. Nothing in the video

Case 3:19-cr-00211-ADC   Document 103   Filed 04/19/22   Page 10 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

recording of the interview suggests that Defendant was confused, dazed, drowsy or sleepy. After thoroughly considering the video recording of the interview, it is the Court's conclusion that Defendant was alert, cooperative, and coherent, and that there is no indication that his statements were in any way coerced or the product of threats by law enforcement. See e.g., United States v. Palmer, 203 F.3d at 61 (finding of lucidity and confession voluntary upon considering defendant's tone, clarity and detailed recall of robberies during taped recorded confession); United States v. Jacques, 744 F.3d at 809 (calm demeanor and lucid responses weigh in favor of finding that confession is voluntary).

Defendant argues that, due to his anxiety upon learning of his impending arrest, he exceeded the recommended doses of Klonopin, and the medication made him dizzy, drowsy or sleepy, and gave him amnesia. Defendant relied on the testimonies of Dr. Tarafa-Pérez and Dr. Díaz-Ramírez. Both physicians testified to have treated Defendant for depression and anxiety, and Dr. Díaz-Ramírez testified that she prescribed him Klonopin for anxiety and that Klonopin could cause calmness, drowsiness, dizziness, amnesia, and confusion. Neither of these physicians saw or spoke to Defendant on the day of his arrest. And neither had any knowledge as to whether Defendant took Klonopin on the day of his arrest or as to what effects (if any) Klonopin had on Defendant that day. Indeed, the treatment provided by Dr. Tarafa-Pérez dated to the year 2014—more than five (5) years prior his arrest—and Dr. Díaz-Ramírez's treatment of Defendant at a time proximate to the arrest (in the year 2019) consisted solely in providing prescriptions to Klonopin. To find that these physicians could provide any evidentiary support for the effects that Klonopin could have had on Defendant's ability to waive his Miranda rights voluntarily and knowingly would be at best speculative. Furthermore, other than Defendant's self-serving testimony (which is contradicted by the sworn statement at Docket No. 26-1), there is no evidence that Defendant in fact took Klonopin on the day of his arrest and of the effects that the Klonopin could have had on Defendant that day. Even taking as true Defendant's testimony that he did take Klonopin at 3:00 p.m. and again at 6:00 p.m., Defendant testified that he was able to drive home for 30 to 40 minutes, that he did not feel sick, and that he was aware of his surroundings. This is consistent with the testimony of SA Medina which established that Defendant was alert and coherent during the interview and with the Court's appreciation of Defendant's conduct and demeanor during the interview. Therefore, absent any evidence of coercion by law enforcement, the Court rejects

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

Defendant's argument that the waiver of his Miranda rights was somehow marred by the effects of Klonopin. See e.g., Henderson v. Norris, 118 F.3d 1283, 1288 (8th Cir. 1997) (schizophrenia without allegation of coercive police conduct insufficient to find confession involuntary); United States v. Annis, 446 F.3d 852, 856 (8th Cir. 2006) (pain and meth withdrawal symptoms without evidence of police coercion is not enough for finding of coercion). See also string of cases standing for proposition that agent testimony that defendant was calm, cooperative, responsive, alert and coherent led to finding of voluntariness despite the use of drugs or alcohol, exhaustion, sleeplessness or mental illness. United States v. Gaddy, 532 F.3d 783, 788-789 (8th Cir 2008); United States v. Burson, 531 F.3d 1254, 1259-1261 (10th Cir. 2008); United States v. Phillips, 506 F.3d 685, 687 (8th Cir. 2007); United States v. Coombs, 857 F.3d 439, 450 (1st Cir 2017).

The Court also rejects Defendant's contention that his waiver of rights was prompted by a promise of law enforcement that he could go home after the interview. Defendant relies on his self-serving statement which is not credible. No such promises or evidence of Defendant's apparent belief can be appreciated from the video recording of Defendant's interview.[3] And, in any event, absent any evidence of coercion, such promises (if credited) would be insufficient to justify a finding of involuntariness here. See United States v. Jacques, 744 F.3d at 809-810 (promise of more favorable treatment or threat of harsher prison sentence without more not enough for finding of coercion); United States v. Carpentino, 948 F.3d at 28 (admonition to tell the truth or suggestion that cooperation will lead to favorable treatment without more not enough for finding of coercion); United States v. Rang, 919 F.3d 113, 117-120 (1st Cir. 2019) (expressions that if cleared defendant could go on about his "merry way" did not amount to coercion).

### IV.    Conclusion

The credible facts of this case warrant a finding that Defendant waived his right to remain silent voluntarily, knowingly and intelligently. Defendant was read and expressed to have understood the Statement of Rights and Waiver prior to initializing and signing the form. The interview conducted by law enforcement, as well as the testimony of the agent, supports the conclusion that Defendant was alert and coherent, understood the charges, and the illegality of his conduct. The evidence also established that Defendant provided coherent and detailed

---

[3] Indeed, after the interview SA Medina told Defendant that they would proceed to find him a place to sleep. Government Exhibit 1A at ¶ 905.

Case 3:19-cr-00211-ADC   Document 103   Filed 04/19/22   Page 12 of 12

USA v. Angel Gabriel Díaz-Rosado
Crim. No. 19-211 (ADC)
Report and Recommendation

explanations, followed the line of questions without difficulty, and voluntarily expressed remorse for his actions. The evidence of Defendant's history of depression and anxiety, and of his use of Klonopin, even if credited, does not establish that Defendant's statements were in any way involuntary or unknowing. There is absolutely no evidence that Defendant's statements were the product of coercion or threats by law enforcement. The totality of the circumstances supports a finding that Defendant's admissions were not the product of coercion or ignorance. There is no basis to suppress Defendant's statements. The motion to suppress should be **DENIED**.

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed within fourteen (14) days of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of the right to appeal. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

In San Juan, Puerto Rico, this 19th day of April 2022.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge